296 P.2d 511

Milan D. SMITH, for and on behalf of Kath-
leen May Smith and Michael Jay Smith,
minor children of Roland B. Smith, de-
ceased, Plaintiffs,

v.

The INDUSTRIAL COMMISSION of Utah,
Smith Canning Company, Box Elder Pack-
ing Corporation, Smith Frozen Foods, Inc.,
and National Surety Company, Defend-
ants.

No. 8455.

Supreme Court of Utah.

May 2, 1956.

Rex W. Hardy, Salt Lake City, for ap-
pellant.

E. R. Callister, Jr., Atty. Gen., Ray R.
Christensen, Salt Lake City, for respondent.

WORTHEN, Justice.

Application was filed for death benefits
under the Workmen's Compensation Act,

7. Adams v. Industrial Comm., 67 Utah 157, 246 P. 364.

U.C.A.1953, 35–1–1 et seq., by Milan D. Smith as guardian of Kathleen May Smith and Michael Jay Smith, minor children of Roland B. Smith, deceased, who met his death in a private airplane crash on April 19, 1954. The accident also claimed the life of the wife of Roland B. Smith.

Roland B. Smith, at the time of his death, was President and General Manager of Smith Frozen Foods, Inc., and Box Elder Packing Corporation, and Vice-President of Smith Canning Company, Utah corporations, all of which are engaged in the business of processing and packing fruits and vegetables. He was also a general partner in the Smith Sales Company, a co-partnership organized to sell the products of the said corporations as well as of the Smith Enterprises in Idaho and Oregon. The partnership was not covered by the Workmen's Compensation Act; the corporations were covered. The only issue before the Commission was whether or not deceased, at the time of his death, was an employee of one or more of the mentioned corporations and acting in the course of his employment.

The Commission denied the claim, finding that at the time of his death Smith was engaged in his capacity of a general partner in the Smith Sales Company. The Commission observed: "It necessarily must follow that the trip was for and on behalf of the partnership * * *."

Plaintiffs contend (1) that the evidence fails to sustain the finding of the Commission that Smith was engaged in the partnership business, and (2) that the Commission failed to find that Smith was not at the time in question representing one or more of the corporate defendants herein mentioned.

There is ample evidence in the record to support the Commission's finding that Smith "was engaged in his capacity of general partner."

It is conceded that at the time of the plane crash Smith was a general partner in Smith Sales Company. The evidence shows that Smith Sales Company was the exclusive sales agent for all the Smith corporate enterprises. Article 2 of Agreement of Partnership provided:

"The partnership shall be for the carrying on of the business of exclusive sales representative of Smith Canning Company, a corporation; Box Elder Packing Corporation, a corporation, Smith Frozen Foods, Inc., a corporation; Inland Empire Frozen Foods Company, a corporation, Smith Frozen Foods of Oregon, Inc., a corporation, Smith Canning Company of Oregon, a corporation; and Smith Frozen Foods, a co-partnership. And it is agreed that this said partnership shall also act as the sales representative of any and all other companies to be formed by the Smith interests. And in addition the partnership shall carry on a general brokerage and sales business in foods."

Article 12 of the Agreement of Partnership provides:

"Each of the parties hereto shall diligently employ himself or herself in the business of the said partnership and be faithful to the others in all transactions relating to the firm, and give, whenever required, a true account of all business transactions arising out of, or connected with, the conducting of the partnership, and neither of the partners shall employ either *the capital or the credit of this partnership in any other than this partnership business.*"

All testimony offered came from witnesses called by plaintiffs. The comptroller of the partnership testified that the three Utah corporations were producing companies, and the partnership was a selling organization, and that the production companies as such were not concerned in promoting sales, that was the peculiar function of the partnership.

Victor R. Smith, a partner in and manager of Smith Sales Company, testified that on April 19, 1954, the deceased, in company with William Robbins and their respective wives, left on a trip for the primary purpose of contacting buyers of surplus tomato products. Mr. Robbins was the Sales Manager of Smith Sales Company and was employed solely by the partnership. The airplane was owned by the partnership as was the hangar, and the insurance was paid by the partnership. Hearsay reference was made to the effect that deceased was interested in discussing freight rates in Chicago.

There was some evidence introduced that would tend to show that Smith Frozen Foods, Inc., of which deceased was President, underwrote a part of the expense. A photostatic copy of a check drawn upon the account of said corporation by Roland B. Smith for $200 in favor of *Clearfield Pharmacy* and bearing the notation, "Traveling Expenses," was introduced.

As observed by the Commission this was one minor detail in a picture of a general selling trip by the partnership. It might be observed that the $200 would constitute a minor part of the total expense of the trip contemplated to take them to Kansas, Missouri, Iowa, Minnesota, Wisconsin and Illinois.

If it be assumed that the $200 which deceased drew as *travel expense* was for use on the trip being taken by himself and wife, it does not follow that he was representing the corporations. The corporations were not engaged in selling. The partnership was exclusive sales representative. He was powerless to represent the production corporations in selling the surplus tomato crop, but he might properly represent the partnership. It is not enough to show that Smith was an employee of the production corporations; it must further appear that he lost his life while in the course of his duties as such employee. It was not his duty as representative of any corporation to pro-

mote sales; that was his duty as a general partner.

As to the second question, it would seem that a positive finding that Smith was representing the partnership would under the facts in this case necessarily preclude a finding that he was also engaged in corporate work. It would be clearer had the Commission spelled out the negative—that Smith was not representing any of the corporations on this trip. The affirmative finding that he was engaged in his capacity of a general partner of Smith Sales Company carries with it the conclusion that he was not engaged in his capacity of an employee or officer of one or more of the corporations.

Our holding that the affirmative finding carries with it the implied negative finding herein referred to is further supported by the failure of the Commission to award compensation which could only be denied the defendants by first finding that the deceased was not engaged in his capacity of corporate employee. The order of the Commission could only follow their conclusion that the finding that Smith was engaged in his capacity of general partner in the Smith Sales Company was a finding that he was not engaged in his capacity of corporate employee or officer.

Article 12 of the Partnership Agreement specifically prohibited Roland B. Smith, as a partner, from employing either the capital or the credit of the partnership in any other than partnership business. The Commission was justified in finding that the private plane was being used on this trip only for partnership business.

Order affirmed. Costs to defendants.

McDONOUGH, C. J., and HENRIOD, CROCKETT, and WADE, JJ., concur.